437 A.2d 417

Betty LOBIANCO, Appellant

v.

PROPERTY PROTECTION, INC.

Superior Court of Pennsylvania.

Argued Dec. 3, 1980.

Filed Nov. 20, 1981.

348

Robert J. Brown, York, for appellant.

Michael J. Brillhart, York, for appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, BROSKY and MONTGOMERY, JJ.

SPAETH, Judge:

Appellant seeks to recover $35,815 as the value of jewelry stolen from her home when a burglar alarm system installed by appellee failed to work. The action is in two counts. The first count is in assumpsit for breach of warranty. The second count is in trespass and alleges strict liability under the Restatement (Second) of Torts § 402A. The lower court heard the case without a jury. On the first count the court held that by the terms of the contract for the installation of the burglar alarm system, damages for breach of warranty were limited to the cost of repairs. On the second count the court held that "[Section 402A] does not apply in the present case. [The alarm system] was not dangerous and did not cause any physical harm to [appellant] or her property."

Opinion of the Lower Court, R. 62a. It being stipulated that appellee had repaired the alarm system without expense to appellant, the court found that appellant had suffered no damages. Appellant filed exceptions. The court dismissed the exceptions and entered judgment in favor of appellee. Appellant's appeal from this judgment was argued before a panel of this court, and was re-argued before the court *en banc*. We affirm, although on the trespass count alleging strict liability under Section 402A our reasoning is somewhat different from the lower court's.

## I

The contract to install the burglar alarm system provided: Alarm system equipment installed by Property Protection, Inc. is guaranteed against improper function due to manufacturing defects of workmanship for a period of 12 months. The installation of the above equipment carries a 90-day warranty. The liability of Property Protection, Inc. is limited to repair or replacement of security alarm equipment and does not include loss or damage to possessions, persons or property.

R. 8a.

As installed, the alarm system included a standby battery source of power, in case the regular source of power failed. Appellant contends: that the burglary of her home and the theft of her jewelry occurred on November 22, 1975, which was within the 90 day warranty period (complaint, para. 8); that after "destroy[ing] [the electric meter] . . . so that there was no electrical source to operate the said alarm system" (*id.*, para. 11), the burglar, or burglars, entered through a rear door (*id.*, para. 10); but that "no outside siren was detonated [*sic*] by the break-in as well as no telephone calls were received" (*id.* para. 9), because "[t]he standby alarm system . . . failed to operate in that the batteries installed by [appellee] . . . had no power and were 'dead' " (*id.*, para. 12).

Appellant argues that the clause limiting appellee's liability to the cost of repairing the burglar alarm system is

invalid for two reasons. First, she says, the clause is unconscionable under the Uniform Commercial Code § 2–719 (12A P.S. 2–719, repealed and re-enacted as 13 Pa.C.S. § 2719). Second, she says, the clause is a modification of appellee's express and implied warranties of merchantability and fitness and as such, fails to conform to the requirement of Section 2–316 of the Code that it be in conspicuous type.

■■■ Before addressing these arguments, we must determine whether, as appellant assumes, the installation of the burglar alarm system was a sale of "goods" within the meaning of the Uniform Commercial Code. We conclude that it was. The Code defines "goods" to mean:

> [A]ll things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action.
> 13 Pa.C.S. § 2105(a) (cross reference omitted).

This definition embraces every species of property other than real estate, choses in action, or investment securities. *Duffee v. Judson*, 251 Pa.Superior Ct. 406, 380 A.2d 843 (1977) (mobile homes). *See also, Belmont Industries, Inc. v. Bechtel Corp.*, 425 F.Supp. 524 (E.D.Pa.1974) (structural steel accompanied by design services).

## A.

Section 2–719(c) of the Uniform Commercial Code provides:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.
> 13 Pa.C.S. § 2719(c).

Here, neither presumption applies. There was no "injury to the person" of appellant; nor was the loss "commercial." We must therefore look elsewhere to determine whether the clause limiting appellee's liability to the cost of repairing the burglar alarm system should be enforced.

Generally, provisions in sales contracts limiting a seller's liability to repair or replacement have been enforced when a defect in the product sold could result in excessive liability for consequential damages. *See e. g., Ebasco Services, Inc. v. Pennsylvania Power & Light Co.,* 460 F.Supp. 163 (E.D. Pa.1978) (steam turbine generator); *Posttape Associates v. Eastman Kodak Co.,* 450 F.Supp. 407 (E.D.Pa.1978) (motion picture film); *Lincoln Pulp & Paper Co. Inc. v. Dravo Corp. v. Babcock & Wilcox Co.,* 445 F.Supp. 507 (N.D.Me.1977) (*dictum*) (heat and chemical recovery boiler); *American Electric Power Co., Inc. v. Westinghouse Electric Corp.,* 418 F.Supp. 435 (S.D.N.Y.1976) (*dictum*) (steam turbine generator); *Rust Engineering Co. v. Lawrence Pumps, Inc.,* 401 F.Supp. 328 (D.C.Mass.1975) (*dictum*) (circulating acid pumps); *Schultz v. Jackson,* 24 Ill.Dec. 395, 385 N.E.2d 162, 67 Ill.App.3d 889 (1979) (grain drier); *D.O.V. Graphics, Inc. v. Eastman Kodak Co.,* 46 Ohio Misc. 37, 347 N.E.2d 561 (1976) (photographic paper); *Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 265 N.W.2d 513 (1978) (recreational vehicle). *But cf., Tuttle v. Kelly-Springfield Tire Co.,* 585 P.2d 1116 (Okl.1978) (sale of automobile tires; clause limiting liability held unconscionable when raised in defense of personal injury claim).

Clauses limiting liability in security alarm contracts have uniformly been upheld, although no case appears to have done so in the context of the Uniform Commercial Code. In *Better Food Markets, Inc. v. American District Telegraph,* 40 Cal.2d 179, 253 P.2d 10, 42 A.L.R.2d 580 (1953), the contract called for the defendant to send guards to the plaintiff's premises and to notify the local police if the alarm was activated. A burglary took place, the alarm was activated, but the defendant failed to respond promptly. The burglars left with $35,930. Holding as a matter of law that it was impractical to estimate the actual damages resulting from the failure of the system, the California Supreme Court, applying the California Civil Code, upheld a cause limiting the defendant's liability to $50. *Id.* at 186, 253 P.2d at 15. Similar reasoning has been applied in other states.

*See, e. g., Central Alarm of Tucson v. Ganem,* 116 Ariz. 74, 567 P.2d 1203 (App.1977); *Niccoli v. Denver Burglar Alarm, Inc.,* 490 P.2d 304 (Colo.App.1971); *Alan Abis, Inc. v. Burns Electronic Security Services, Inc.,* 283 So.2d 822 (La.App. 1973); *Shaer-Shoe Corp. v. Granite State Alarm, Inc.,* 110 N.H. 132, 262 A.2d 285 (1970) (fire sprinkler system); *Foont-Freedenfeld Corp. v. Eletro-Protective Corp.,* 126 N.J.Super. 254, 314 A.2d 69 (1973) (fire alarm), *aff'd,* 64 N.J. 197, 314 A.2d 68 (1974).

We do not regard *Wedner v. Fidelity Security Systems, Inc.,* 228 Pa.Superior Ct. 67, 307 A.2d 429 (1973) (allocatur denied), as contrary to these decisions. There, the plaintiff, a furrier, suffered a loss in excess of $46,000 from a burglary of his commercial premises. The lower court held that the plaintiff was bound by a clause limiting the defendant's liability to the annual service charge of $312. Judge WATKINS, joined by Judge JACOBS and Judge SPAULDING, in the opinion in support of affirmance reasoned that the clause should be enforced because the contracting parties were both "experienced, established business persons." *Id.,* 228 Pa.Super. at 72, 307 A.2d at 432 (quoting the lower court). The plaintiff, Judge WATKINS said, "had a choice as to how to protect his property, and whether or not he should obtain insurance." *Id.* Judge CERCONE, joined by President Judge WRIGHT and Judge HOFFMAN, in the opinion in support of reversal reasoned that the clause was invalid. Since the limitation was a sum equal to the yearly service charge, Judge CERCONE said, "the clause in effect works a recission of the contract, completely freeing defendant from proper performance of its terms and requiring only a return of the service charge when defendant has failed to properly perform thereunder. The contract thus becomes, in effect, an illusory one with defendant not being bound to perform and plaintiff not being entitled to performance by defendant." *Id.,* 228 Pa.Super. at 76, 307 A.2d at 434. While Judge WATKINS's opinion in support of affirmance is in *accord* with the decisions from the other states that we have cited, Judge CERCONE's opinion in support of reversal

is not *contra*. For here the clause limiting appellee's liability did not render the contract illusory. Appellee could not at its option escape its duty of performance. Appellant remained entitled to performance, that is, to require appellee to repair the alarm system so that it would work. Like the plaintiff in *Wedner*, appellant was capable of assuming the risk of loss that the contract left her with; she "had a choice as to how to protect [her] property, and whether or not [she] should obtain insurance."

We therefore conclude, as have courts in other states, that the clause limiting appellee's liability to the cost of repairing the burglar alarm system should be enforced. This conclusion, moreover, is consistent with the Uniform Commercial Code's underlying purposes and policies in that it "permit[s] the continued expansion of commercial practices through custom, usage and agreement of the parties," and conforms to the "law among the various jurisdictions." U.C.C. § 1–102(2)(b) & (c). To avoid misunderstanding, we add that our conclusion extends only to so much of the clause as refers to "loss or damage to possessions ... or property;" insofar as the clause refers to "loss or damage to ... persons," we express no opinion regarding its validity, as that issue is not before us.

### B.

Section 2–316(2) of the Uniform Commercial Code provides:

[T]o exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in the case of a writing, must be conspicuous, and to exclude or modify any warranty of fitness, the exclusion must be by a writing and conspicuous....

13 Pa.C.S. § 2316(b).

Appellant's argument that this provision required the clause limiting appellee's liability to the cost of repairing the burglar alarm system to be in larger or contrasting type is without merit. As the lower court observed, appellee

is not seeking to exclude the warranties but rather is simply attempting to limit its liability, despite the warranties.

Opinion of lower court, R. 64a.

In this regard we also note that the clause limiting appellee's liability, while not in larger or contrasting type, is in the same type as the body of the contract, and is in the paragraph where it logically belongs.

## II

In *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), our Supreme Court expressly adopted the Restatement (Second) of Torts § 402A. This section states:

§ 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In explaining its decision that appellant is entitled to no relief under Section 402A, the lower court said:

It is immediately apparent from the foregoing language that this section does not apply in the present case. [Appellee's] product was not dangerous and did not cause any physical harm to [appellant] or her property . . . . [T]he only products which come under the section are

those which cause physical harm, such as food which causes illness, bottles which explode or a defective automobile tire which causes an accident. For example, in the present case, if the system had defective wiring which caused a fire, [appellee] might well be liable to [appellant] for the fire loss to her property.

Opinion of lower court, R. 62a.

On appellant's petition for reconsideration, the lower court added:

We do not agree with [appellant] that we should equate the terms "physical harm" with the "theft" of the jewelry .... [T]here must be an actual injury to the plaintiff or his property.

Supplemental Opinion of lower court, R. 103a.

We find this reasoning unpersuasive. In explaining why, it will be convenient to consider first the lower court's conclusion that the theft of appellant's jewelry did not result in any "physical harm" to the jewelry, and next, the conclusion that the burglar alarm system "was not dangerous ... to [appellant's] property."

In one sense of the expression, appellant's jewelry did not suffer any "physical harm"—at least, the record does not show that it did. For all we can tell, after being stolen the jewelry was sold to a fence, and is now being worn, in the same physical condition in which it was when appellant had it, by some one who brought it from the fence. However, we regard this possibility as irrelevant, for in our opinion, the expression "physical harm" as used in Section 402A should not be construed as requiring that the plaintiff—"the user or consumer"—prove damage to the property.

Suppose that the burglar, or burglars, who took appellant's jewelry had broken the mirror on her dressing table. If we were to accept the lower court's reasoning, and construe "physical harm" as requiring appellant to prove damge to her property, we should conclude that the mirror had suffered physical harm but the jewelry had not. This conclusion would be artificial; it would make the outcome of

a case depend on happenstance, with no reference to the reason Section 402A was adopted.

■ So far as appellant as the user or consumer of the jewelry is concerned, the theft of the jewelry deprived her of its use as effectively as if it had been broken and left lying, useless, on the floor of her home. The reason Section 402A was adopted was not to protect property from damage but to protect the user or consumer of the property from its loss. Whether the loss is caused by damage to the property or by its disappearance is immaterial.

■ Similarly, in one sense of the expression, the burglar alarm system was not "dangerous" to appellant's property; as the lower court suggests, the system did not because of defective wiring cause a fire in appellant's home. However the imposition of strict liability under Section 402A does not depend upon proof that the product itself caused the physical harm in question. To be sure, if the product itself did in fact cause the physical harm in question, strict liability may be imposed. It is, however, incorrect to say, as the lower court did say, that the "only products which come under [Section 402A] are those which cause physical harm, such as food which causes illness, bottles which explode or a defective tire which causes an accident." Opinion of lower court, R. 22a.

■ A product may by itself be entirely innocuous—harmless—and yet, because in conjunction with some other thing or event it caused physical harm, strict liability may be imposed. For example: In *Carpini v. Pittsburgh and Weirton Bus Co.*, 216 F.2d 404 (3d Cir. 1954), a pet cock was so placed in the undercarriage of a bus as to be unprotected from debris on the road. The bus, heavily overloaded, was proceeding on a highway filled with debris from a severe storm the night before. The pet cock hit the debris and became disengaged, the brakes drained, and the bus had an accident. In *Ford Motor Co. v. Zahn*, 265 F.2d 729 (8th Cir. 1959), an ash-tray on the dashboard of a Ford had a sharp edge. Another car suddenly darted from a side road, in

front of the Ford, causing the driver to apply the brakes, throwing the passenger onto the ashtray, injuring his eye. In *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968), a head-on collision pushed the steering mechanism of a Chevrolet Corvair back into the driver's head. In *Turcotte v. Ford Motor Company*, 494 F.2d 173 (1st Cir. 1974), a Maverick was hit by another car and burst into flames. The passenger died in the fire. In *Ritter v. Narrangansett Elect. Co.*, 109 R.I. 176, 283 A.2d 255 (1971), a four-year old girl opened the drop-type oven door of an electric range and stood on it so that she could see into a pot on top of the range. He weight on the open door caused the range to topple over onto her and her sister. In *Turner v. General Motors Corp.*, 514 S.W.2d 497 (Tex.Civ.App.1974), the driver of a Chevrolet Impala hardtop sedan was passing a truck when the truck tried to make a left-hand turn. In avoiding a collision, the driver left the road, and the Chevrolet overturned. The roof collapsed onto the driver's head. In all of these cases it was held that strict liability might be imposed. In none of them did the product itself cause the harm. Nevertheless, it was held that the manufacturer of the product was bound to anticipate the thing or event in conjunction with which the product caused the harm. *And see Cronin v. Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972) (safety hasp failed in collision, permitting cargo racks to enter truck driver's compartment); *Badorek v. General Motors Corp.*, 11 Cal.App.3d 902, 90 Cal.Rptr. 305 (1970) (Corvette burst into flames in rear end collision); *Friend v. General Motors Corp.*, 118 Ga.App. 763, 165 S.E.2d 734, *cert. dismissed*, 225 Ga. 290, 167 S.E.2d 926 (1969) (seats folded over in collision); *Volkswagen of America, Inc. v. Young*, 272 Md. 201, 321 A.2d 737 (1974) (seat assembly failed to hold in rear end collision); *Frericks v. General Motors Corp.*, 20 Md.App. 518, 317 A.2d 494 (1974) (roof collapsed and seat mechanism failed in roll over); *Dyson v. General Motors Corp.*, 298 F.Supp. 1064 (E.D.Pa.1969) (roof collapsed in roll over); *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516 (Tenn.1973) (plastic emblem cut plaintiff's face in accident). *See also, Central Alarm of Tucson v. Ganem,*

*supra,* (negligence of alarm company proximately caused loss by theft).

■ We recognize that some cases are *contra.* For example, in *Evans v. General Motors Corp.,* 359 F.2d 822 (7th Cir. 1966), another automobile hit a Chevrolet station wagon on its left side, which collapsed in on and killed the driver. The theory of the complaint was that General Motors as manufacturer of the station wagon had created an unreasonable risk of harm to the occupants because the wagon was designed with an "X" frame with no side rails to protect the occupants in case of side-impact collisions. In holding that the complaint failed to state a claim, the court—in a statement similar to the lower court's here—said that the "X" frame had not itself caused any harm. 359 F.2d at 824. The Court distinguished such cases as *Carpini v. Pittsburgh and Weirton Bus Co., supra,* and *Ford Motor Co. v. Zahn, supra,* saying that "[t]he products involved in all these cases were unfit for their intended use . . . ." *Id.* at 825. In the case before it, the court said, "[T]he intended purpose of an automobile does not include its participation in collisions. . . ." *Id.* The dissent found this distinction unpersuasive, and so do we. As the court observed in *Larsen v. General Motors Corp., supra:*

> The intended use and purpose of an automobile is to travel on the streets and highways, which travel more often than not is in close proximity to other vehicles and at speeds that carry the possibility, probability, and potential of injury-producing impacts. The realities of the intended and actual use are well known to the manufacturer and to the public and these realities should be squarely faced by the manufacturer and the courts. We perceive of no sound reason, either in logic or experience, nor any command in precedent, why the manufacturer should not be held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. The manufacturers are not insurers but should be held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel.

391 F.2d at 502–03.

So here. The intended use and purpose of a burglar alarm system is to sound an alarm if a burglar enters the house. If because of defective batteries the system does not sound an alarm, with the result that a burglar is able to enter the house undetected and do physical harm to jewelry inside, the issue of the manufacturer's strict liability may not be resolved by saying, as did the lower court, that although defective, the system was not "dangerous" to the jewelry it was supposed to protect.

■ Having said this much, we nevertheless agree with the lower court's conclusion that Section 402A "does not apply in the present case." Opinion of lower court, R. 62a. It is unimportant that we have reached that conclusion by reasoning different from the lower court's, for we may affirm on reasoning different from the lower court's. *Commonwealth v. Dancer*, 460 Pa. 95, 101 n.5, 331 A.2d 435, 438 n.5, (1975); *Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 604, 327 A.2d 94, 96 (1974); *Prynn Estate*, 455 Pa. 192, 197 n.9, 315 A.2d 265, 267 n.9 (1974); *Concord Township Appeal*, 439 Pa. 466, 469, 268 A.2d 765, 766 (1970).

In *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977), the court said:

The purpose of the rule of strict tort liability "is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." (*Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63, 27 Cal.Rptr. 697, 701, 377 P.2d 897, 901.) However, the rule "does not rest on the analysis of the financial strength or bargaining power of the parties to the particular action. It rests, rather, on the proposition that '[t]he cost of an injury and the loss of time or health may be an overwhelming misfortune to the person injured, and a needless one, for the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business.' (*Escola v. Coca Cola Bottling Co.*, 24 Cal.2d 453,

462, 150 P.2d 436 [concurring opinion].)" (*Seely v. White Motor Co.* (1965) 63 Cal.2d 9, 18–19, 45 Cal.Rptr. 17, 23, 403 P.2d 145, 151.) Thus, "the paramount policy to be promoted by the rule is the protection of otherwise defenseless victims of manufacturing defects and the *spreading throughout society* of the cost of compensating them." (Italics added.) *Price v. Shell Oil Co.* (1970) 2 Cal.3d 245, 251, 85 Cal.Rptr. 178, 181, 466 P.2d 722, 725.)

19 Cal.3d at 30–31, 136 Cal.Rptr. at 579, 560 P.2d at 8–9. *And see Miller v. Preitz,* 422 Pa. 383, 221 A.2d 320 (1966) (concurring and dissenting opinions, discussing with a full collection of authority the development of the rule of strict liability; these opinions were cited with approval in *Webb v. Zern, supra,* 422 Pa. at 427, 220 A.2d at 854); *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Superior Ct. 15, 434 A.2d 106 (1981).

The purposes thus stated would not be served by applying Section 402A to the present case. Homeowners are not "otherwise defenseless victims" of burglar alarm manufacturers in the same sense that a buyer of an automobile, for example, may be the victim of the automobile manufacturer. If the property is valuable, the homeowner may insure it. To apply Section 402A to the present case would in practical effect excuse the homeowner from having to insure the property and would shift the risk of its loss to the burglar alarm manufacturer. This would represent a less, not more, equitable allocation of the risk. The homeowner, not the manufacturer, knows what property is in the home, and its value; the manufacturer does not. Even if the manufacturer were to find out what property was in the home before installing the burglar alarm system, the homeowner could, and probably would, add other property, without notice to the manufacturer. As between the homeowner and the manufacturer, the manufacturer is more "defenseless" than the homeowner. If the homeowner buys a silver service or a stereo system, at least he can get insurance against its loss; but the manufacturer cannot, for it will not know that the service or stereo has been put in the home. Thus it may not

be said that " 'the risk of injury can be insured by the manufacturer and distributed among the public as a cost of doing business.' " *Ray v. Alad Corp., supra.* Nor may it be said that the manufacturer ought to protect itself by increasing its charge, in that way distributing the risk. That would mean that a homeowner with personal property of only modest value would be required to pay for his burglar alarm system a price high enough to protect the manufacturer against the loss it might incur if a homeowner with personal property of great value were burglarized. Those of modest means would be subsidizing the rich.

Summarizing the cases on strict liability, Prosser has said:

> The courts have tended to lay stress upon the fact that the defendant is acting for his own purposes, and is seeking a benefit or a profit of his own for such activities, and that he is in a better position to administer the uninsured risk by passing it on to the public than is the innocent victim. The problem is dealt with as one of allocating a more or less inevitable loss to be charged against a complex and dangerous civilization, and liability is imposed on the party best able to shoulder it. The defendant is held liable merely because, as a matter of social adjustment, the conclusion is that the responsibility should be his.

Prosser on Torts 495 (4th ed. 1971).

This is well said, for its recognizes—indeed, emphasizes—that whether a case is one appropriate for the imposition of strict liability is a decision that the court must make according to what "social adjustment" it believes just.

Our own Supreme Court has arrived at the same conclusion, in *Azzarello v. Black Bros. Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978). There the issue was whether the trial judge should have instructed the jury that it could find strict liability only if it found the product in question "unreasonably dangerous." The Court held that the judge should not have, and it approved the Proposed Standard Jury Instructions, which make no reference to "unreasona-

bly dangerous," instead directing the jury's attention to whether the product had a "defect." "It must be understood," said the Court, "that the words, 'unreasonably dangerous' have no independent significance and merely represent a label to be used where it is determined that the risk of loss should be placed upon the supplier." 480 Pa. at 556, 391 A.2d at 1025. The Court continued:

> [T]he phrases "defective condition" and "unreasonably dangerous" as used in the Restatement formulation [Section 402A] are terms of art invoked where *strict liability* is appropriate. It is a judicial function to decide whether under plaintiff's averment of the facts, recovery would be justified; and only after this judicial determination is made is the cause submitted to the jury to determine whether the facts of the case support the averments of the complaint.

480 Pa. at 558, 391 A.2d at 1026.

*And see Dawejko v. Jorgensen Steel Co., supra* (deciding when it is just to impose strict liability on corporation that is successor to corporation that manufactured the product).

■ Here, we hold that for appellant to be permitted to recover on a theory of strict liability would not be justified. "[A]s a matter of social adjustment," Prosser, *supra,* the responsibility for protecting against the loss of her jewelry should, so far as the imposition of strict liability is concerned, be appellant's, not appellee's. Again, to avoid misunderstanding, we add that we have confined ourselves to the issue of strict liability for physical harm to property. If harm to a person were involved, as for example which might occur if a homeowner were injured by a burglar who had entered the home undetected because the burglar alarm system failed, a different case would be presented. As to what should be the disposition of such a case, we express no opinion.

AFFIRMED.

CERCONE, President Judge, files a concurring statement.

BROSKY, J., files a concurring opinion, in which CAVA-NAUGH, J., joins.

MONTGOMERY, J., files a dissenting opinion, in which HESTER, J., joins.

CERCONE, President Judge, concurring:

Although I agree with the analysis and result of the majority on both the § 402A issue and the contractual issue, I feel that I must comment upon my position in *Wedner v. Fidelity Security Systems, Inc.*, 228 Pa.Superior Ct. 67, 307 A.2d 429 (1973). The *Wedner* case is limited to its own facts and is not controlling in this matter. Moreover, *Wedner* does not set forth principles which are to be applied generally.

The contractual provision under scrutiny in *Wedner* was tantamount to termination of the contract. Such is not the case instantly. Herein, the contract ensures that the burglar alarm company must continue service and make the necessary repairs. The question thus becomes, whether the burglar alarm company should be responsible for *all* consequences resulting from a malfunctioning alarm system. Under the circumstances presented, I do not believe that the company should be made wholly liable for the loss incurred.

BROSKY, Judge, concurring:

I concur in the result reached by the majority but disagree with its analysis of appellant's 402A claim. I would also affirm the lower court's finding that Section 402A "does not apply in the present case," but for reasons different than those advanced by the majority. I do not believe that the insurability of appellant's loss provides a basis for the denial of strict liability recovery. Rather I would find that the injury suffered by appellant is not of the type for which strict liability ought to be imposed.

I base my opinion on what I perceive to be the purpose of Section 402A. In *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), our Supreme Court compared strict liability with the liability that stems from breach of warranty. The

court quoted with approval the following statement of the policy considerations underlying the imposition of strict liability.

> ... these policy considerations are plain: the consumer's inability to protect himself adequately from defectively manufactured goods... *the implied assurance on the part of the seller that his goods are safe*... the superior risk bearing ability of the manufacturer. (Emphasis added.) Id., 432 Pa. at 230, 246 A.2d at 864, n.6.

In *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822 (1976), this court discussed the meaning of the word "defect" in 402A actions. We wrote in part, "Dean Prosser has noted that '[t]he prevailing interpretation of "defective" is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety.'" Prosser, *Law of Torts*, 659 (4th Ed. 1971). Finally, in *Berkebile v. Brantley Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975), our Supreme Court stated, "We emphasized the principle of liability without fault most recently by stating that the seller is "effectively the guaranter of his product's safety." (citing case) See also *Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978).

The malfunction of the burglar alarm in this case did not render the alarm *unsafe*, although it certainly made it ineffective. The loss suffered by appellant was not physical injury resulting from an unsafe product, but rather, the foreseeable consequence of a malfunctioning burglar alarm.

Presented with an almost identical factual situation in the recent case, *Fireman's Fund American Insurance Companies v. Burns Electronic Security Services*, 93 Ill.App.3d 298, 48 Ill.Dec. 729, 417 N.E.2d 131 (1981), the Illinois appellate court denied a plaintiff's 402A claim. The plaintiff in that case had purchased a burglar alarm to be installed at a jewelry store. The alarm malfunctioned and burglars stole $800,000 worth of jewelry from the store.

As in the present case, the contract between the purchaser and seller of the alarm contained a limitation of liability.

The purchaser sued the seller on warranty, negligence and strict liability theories. The court wrote of the third count,

Plaintiff cast its third count in strict tort liability in an effort to circumvent the contractual limitation of liability. In arguing that this count should be reinstated plaintiff asserts that the loss of the jewelry was equivalent to its physical destruction and its value is recoverable therefore under a theory of strict tort liability.

The Illinois Court rejected that claim and considered the loss to be an economic loss, which is not recoverable in tort in Illinois. The court explained that this type of loss is covered by the contract. I agree with the following statement of the Illinois Court.

When goods are sold, their soundness is the core of the bargain. It is for the parties to decide what the consequences will be if the bargain founders. An entire body of law, contracts—of which product warranties is a part— is available to govern those areas of the relationship concerning which the bargain is silent. There is thus no need for the law of torts to define the rights of parties in privity when they have done so themselves. When a buyer loses the benefit of his bargain because the goods are defective, that is, when he suffers economic loss, he has his contract to look to for remedies. Tort law need not, and should not enter the picture.

See also, "Pennsylvania Products Liability: A Clarification of the Search For a Clear and Understandable Rule," John E. Murray, 33 U. of Pittsburgh Law Review, 391 (1972), in which the author criticizes Pennsylvania cases which suggest that pure economic loss is recoverable in a 402A action. Dean Murray concludes,

The present notion of permitting a 402A action for pure economic loss threatens to encroach upon the legislative mandate established in the Code. If the relief sought is compensation for loss of bargain as contrasted with some physical injury, there can be little question that the Code with all of its qualifications was designed to deal with such matters and to protect the expectation interest of the parties. Id. at 427, 428.

I agree with the Illinois court's unwillingness to characterize the type of loss suffered here as being within the terms of 402A. The appellant's economic situation is worsened; but there is no evidence that the property was harmed. Additionally, any "harm" to the property was not the result of an unsafe condition of the alarm, but, rather, to its malfunctioning.

As Dean Murray notes in the earlier quoted article, application of 402A to such cases enables a purchaser to circumvent "Code notice requirements, effective disclaimers of warranty or effective limitations on consequential damages." Id. at 426.

It is for these reasons that I would affirm the order of the lower court.[1]

MONTGOMERY, Judge, dissenting:

The instant case arises from an action instituted by the Plaintiff-Appellant to recover damages for goods lost in a burglary at her residence. The Defendant-Appellee was the seller and installer of a burglar alarm system at the residence, which system did not function during the burglary. The Defendant was successful in the lower court in its assertion of the claim that the Plaintiff was restricted in her right of recovery by virtue of a clause in a contract between the parties which limited Defendant's liability to the repair or replacement of the security system. The Plaintiff has appealed.[1] I strongly believe that the lower court erred in

1. I add parenthetically that the majority's reliance on the insurability of the loss seems misplaced. After all, aren't automobiles and losses incurred from their malfunctioning insurable? Yet, a 402A surely is sustainable for injuries caused by defective automobiles.

1. The somewhat complicated procedural history shows that following the close of pleadings, the Plaintiff's deposition was taken, and a Motion for Summary Judgment filed on behalf of the Defendant. The lower court issued an Order denying Summary Judgment, but limiting Plaintiff's recovery to the terms of the limitation of damages clause in the contract between the parties. Upon Plaintiff's Petition, the lower court amended its Order, to state that the Order, while not final, involved controlling questions of law, as to which there were substantial grounds for difference of opinion, pursuant to Pennsylva-

permitting the Defendant to place reliance upon the limitation of liability clause, as I believe it to be a clearly unconscionable contract provision, thereby providing no valid support for the Defendant's position.

The relevant factual background should be briefly stated. In September, 1975, the Defendant proposed to install a security alarm system in the Plaintiff's residence. The Defendant's proffered written proposal was accepted by the Plaintiff, and thus became the contract between the parties. It contained the following provision:

> The liability of Property Protection, Inc. is limited to repair or replacement of security alarm equipment and does not include loss or damage to possessions, persons or property.

Approximately one and one-half months after the system was installed, a burglary occurred at Plaintiff's residence, and property allegedly valued at approximately $36,000.00 was stolen. The alarm system did not operate during the burglary. While Defendant claims it fulfilled its duty under contract and satisfied its liability to Plaintiff by repairing or replacing the alarm equipment which malfunctioned, the Plaintiff claims she is entitled to damages equal to the amount of her property loss. On this appeal, the Plaintiff asserts three separate arguments to support her claim for damages. Contrary to the conclusion reached by the majority of this Court, I find substantial merit in the contention that the clause limiting Defendant's liability is unconscionable, under the facts of this case.

As noted in the Majority Opinion, our Court was faced with a similar situation in *Wedner v. Fidelity Security Systems, Inc.*, 228 Pa.Superior Ct. 67, 307 A.2d 429 (1973). That case involved an action brought by a plaintiff to

nia Rule of Appellate Procedure 1312. Plaintiff then filed a Petition for Permission to Appeal with our Court. This Petition was denied. The parties then agreed to a trial without jury. Subsequently, at the request of the parties, the lower court entered a Supplemental Opinion on questions of law. Thereafter, the parties entered into a stipulation concerning trial and the entry of an Order dismissing Plaintiff's Exceptions and entering judgment in favor of Defendant. The instant appeal was then filed.

recover damages suffered in the circumstances where a burglar alarm system failed, and a large property loss occurred from a resulting burglary. In *Wedner*, the lower court found that the plaintiff was only entitled to recover a minimal amount as a result of a limitation of liability clause in the sales contract with the defendant. An evenly divided Superior Court affirmed the lower court decision, and *allocatur* was thereafter denied by the Supreme Court. Although I will later discuss the *Wedner* case, in this Opinion, it is clear that the affirmance by an evenly divided Superior Court, and the denial of *allocatur* by the Supreme Court, create the result that the *Wedner* decision established no binding appellate precedent with regard to the issues presented.[2]

Other than the aforementioned *Wedner* case, there are apparently no prior appellate decisions in the Commonwealth of Pennsylvania involving a factual situation similar to that presented in the instant case. Thus, in resolving the unconscionability issue presented, we must refer to applicable statutory provisions governing the transaction between the parties. I find pertinent several provisions of the Uniform Commercial Code, which has been adopted in our law since 1953. Act of April 6, 1953, P.L. 3, § 1–101, *et seq.*, effective July 1, 1954, reenacted October 2, 1959, P.L. 1023, § 1, *et seq.*, effective January 1, 1960, 12A P.S. § 1–101 *et seq.* (hereinafter referred to as the "UCC").

UCC § 2–302 (12A P.S. § 2–302) is the section which deals with unconscionable contracts or clauses in connection with sales transactions. It provides:

(1) If the Court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the

---

**2.** It is well settled that no precedent is established in an affirmance by an evenly divided appellate court. *Commonwealth ex rel. Vesneski v. Reid*, 265 Pa. 328, 108 A. 829 (1920); *Commonwealth v. Heller*, 147 Pa.Superior Ct. 68, 24 A.2d 460 (1942); *City of New Castle v. Berger's Heirs*, 74 Pa.Superior Ct. 548 (1920). Also, the refusal of *allocatur* by the Supreme Court creates no precedent in support of which the rule of *stare decisis* can be invoked. See *Dougherty v. Proctor & Schwartz*, 317 Pa. 363, 176 A. 439 (1935).

contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

This Section appears to permit the exercise of broad discretion by a court in the determination of whether a clause may be unconscionable in the circumstances of any particular case.

The clause upon which the Defendant-Appellee relies in the instant case is clearly a limitation of damages clause.[3] In the consideration of a limitation of damages clause, we must also make reference to §§ 2–718 and 2–719 of the UCC. (12A P.S. §§ 2–718 and 2–719). § 2–718, which has the title "Liquidation or Limitation of Damages", provides in pertinent part:

Damages for breach by either party may be liquidated in the agreement but only at an amount which is *reasonable in the light of the anticipated or actual harm caused by the breach*, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty. (emphasis added)

The title of § 2–719 of the UCC is "Contractual Modification or Limitation of Remedy". It states:

(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,

---

3. I reach the conclusion that this is a limitation of damages clause because of the particular wording of the clause. I also note that both the Opinion in Support of Affirmance and the Opinion in Support of Reversal in *Wedner v. Fidelity Security Systems, Inc., supra*, arrived at the same conclusion with regard to a highly similar clause which was in issue in that case.

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

In reviewing the unconscionability claim raised by the Plaintiff-Appellant in this case, it is also helpful to make reference to the Comments to various sections of the Code. While such Comments do not have the weight of legislation, and thus, are not binding, the Pennsylvania courts have given substantial weight to them as evidencing the intended application of the various UCC provisions. See *In re Bristol Associates, Inc.,* 505 F.2d 1056 (3rd Cir. 1974). The drafters of the UCC, in commenting on the subsection of UCC § 2–718, stated above, said: "A term fixing unreasonably large liquidated damages is expressly made void as a penalty. An *unreasonably small amount* would be subject to similar criticism and *might be stricken under the section on unconscionable contracts or clauses.*" (Emphasis added) The comments to § 2–719 state:

". . . parties are left free to shape their remedies to their particular requirements and *reasonable* agreements limiting or modifying remedies are to be given effect.

"However, it is of the very essence of a sales contract that at least minimum adequate remedies be available.

If the parties intend to conclude a contract for sale within this Article, they must accept the legal consequences that there be *at least a fair quantum of remedy for breach* of the obligations or duties outlined in the contract. Thus *any clause purporting* to modify or *limit the remedial provisions* of this Article *in an unconscionable manner is subject to deletion* and in that event the remedies made available by this Article are applicable *as if the stricken clause had never existed.* Similarly, under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or *operates to deprive either party of the substantial value of the bargain,* it must give way to the general remedy provisions of this Article." (emphasis added)

A further Commentary to the UCC is set forth at 12A P.S. XXXIII, *et seq.* At pages XLI and XLII, the Commentary deals with the subject of unconscionability. *Inter alia,* in discussing §§ 2–719, this Commentary states:

"The provision reflects a fundamental policy of the Code which limits freedom of contract on the basis of the larger public interest in decency and in the protection from oppression which might spring from disproportionate bargaining power or other potential sources of abuse."

In the instant case, the facts show a sales contract lacking minimally acceptable adequate remedies for the buyer. The Appellant's deposition, which is part of the record, indicates that she was a 50 year old divorced woman, who lived alone at the time she entered the sales agreement. She was clearly not a commercial customer. The burglar alarm system she purchased was the first she had ever owned and had been installed for only a month and a half prior to the occurrence of the burglary. She relied upon the Defendant-Appellee to suggest the type of alarm system she should purchase. The agreement she signed was prepared by the Defendant-Appellee and the clause in issue was not conspicuous in the contract.[4]

4. Under UCC § 1–201(10) the word "conspicuous" is defined, *inter alia* to require a writing on a form to be in a larger or contrasting

I strongly feel that our Court should hold the purported limitation of damages clause, under these facts, to be unconscionable under Pennsylvania law, as outlined above. The limited damages available to the buyer were certainly not "reasonable in the light of the anticipated or actual harm caused by"[5] the failure of the system. Certainly, a buyer in the circumstances of the Appellant in the instant case is not treated fairly if she suffers a huge property loss occasioned by the failure of the system, yet is limited to a demand for the repair or replacement of the alarm equipment which has malfunctioned.

Former President Judge Watkins authored the Opinion in Support of Affirmance in *Wedner, supra,* holding the clause in issue in that case not to be unconscionable. In doing so, he specifically found "significant" the facts that both the plaintiff and defendant were "experienced, established business persons", and that the Plaintiff had 20 years of prior experience with theft protection contracts involving similar limitation of liability clauses. See 307 A.2d at 432. Of course, in the instant case we are not dealing with a commercial purchaser who can be deemed to have had either bargaining power or the commercial astuteness which Judge Watkins found to be significant on the part of the buyer in the *Wedner* case. Such a difference. cannot be ignored.

The Majority's analysis of the position of those supporting reversal in *Wedner* is both puzzling and incorrect. Any fair reaching of Judge (now President Judge) Cercone's Opinion, joined by former President Judge Wright and Judge Hoffman, makes it plain that it cannot be squared with the decision reached by the Majority in this case. I find invalid the reasoning which suggests that the views expressed in President Judge Cercone's Opinion are not *directly* contrary to the conclusions of the Majority here which uphold the limitation of liability clause. Further, the Majority ignores

type or color. The words in issue in the instant case were clearly not "conspicuous" in the contract, within the UCC meaning of that term.

5. See UCC § 2–718.

the fact that the Plaintiff in *Wedner* was a commercial customer, who had years of experience with security and alarm services, and the contracts under which they were provided. Of course, because of such factors, the circumstances of the instant case are more compelling than *Wedner* for holding the limitation clause invalid. In attempting to find a distinction, the Majority contends that the clause in issue here is not "illusory". I could be disagree more, and believe that the Appellant, who allegedly lost thousands of dollars worth of personal property, will certainly conclude that her sole remedy—the right to have the alarm repaired—can only be described as "illusory".

I would not necessarily hold that *any* limitation of damages clause would be found to be unconscionable with respect to a contract for the sale of a burglar alarm system to a noncommercial customer. In fact, a different conclusion might have been appropriate in the instant case if the clause limiting liability was conspicuous, if it was clear that the customer bargained for and clearly understood the significant waiver of rights which was part of the contract, or even if the limitation on liability was not so harsh in limiting the customer to the mere replacement or repair of the defective equipment. However, such factors are not evident here, and on the record presented, I believe the Majority has seriously erred in failing to hold that the limitation of liability clause is unconscionable.

I would remand for a new trial, at which the Plaintiff would be afforded an opportunity to prove her cause, and if successful, to obtain such remedies as may be provided in the UCC and other existing law. The Defendant would be afforded a full opportunity to defend such action, but not place reliance upon the unconscionable limitation of liability clause.[6]

6. I do not disagree with the conclusions reached by the Majority with regard to the lack of grounds for reversal in the remaining claims of the Appellant, but not necessarily on the same rationale as expressed by the Majority.