LeROY SCHULTZ, Plaintiff-Appellee and Appellant, *v.* ROBERT JACKSON, d/b/a Jackson Sales and Service, Defendant-Appellee.—(DRIALL, INC., Defendant-Appellant.)

Third District   No. 77-459

Opinion filed January 10, 1979.—Rehearing denied February 13, 1979.

John A. Berry, of Berry & O'Conor, of Streator, for appellant.

Matthew A. Maloney, of Princeton, for appellee LeRoy Schultz.

Boyle & Goldsmith, of Hennepin, for appellee Robert Jackson.

Mr. JUSTICE STOUDER delivered the opinion of the court:
Plaintiff, LeRoy Schultz, brought this action against the defendant, Robert Jackson, a farm implement dealer and against the defendant,

Driall, Inc., the manufacturer of a grain drier, claiming that each defendant breached express and implied warranties. The jury found in favor of the plaintiff against Driall on a count charging breach of an implied warranty, but against the plaintiff on all other counts. The court entered judgment in favor of the plaintiff against Driall for $29,350, which was reduced by the court to $19,350 because of a credit to which the defendant was entitled.

During the summer of 1974, plaintiff, a farmer, attended the Illinois State fair and observed a grain drier manufactured by the defendant Driall, Inc., of Attica, Indiana. While at the fair, plaintiff discussed the possible purchase of a drier with the Driall representative. On about the 1st of September, a local dealer, Robert Jackson, of Wyoming, Illinois, called on plaintiff resulting in a written contract to purchase a grain drier manufactured by Driall. The drier was delivered to plaintiff's farm and set up during October 1974 and was in operating condition after the electrical connections were made by the electrician on November 2, 1974. Plaintiff used the corn drier to dry small batches of corn on November 2, November 16 and November 19. On each of these dates plaintiff started the drier on manual operation, but when the drier was switched to automatic operation, either the motor stopped or the fuses controlling the motor were blown. After communicating his troubles to defendant Jackson on Saturday, November 23, two representatives from Driall called on plaintiff, made some adjustments on the equipment and also offered further explanations on the proper operation of the drier. At the time the representatives left, the drier was operating on automatic, but later in the afternoon, it stopped. On November 26, 1974, plaintiff again talked to a representative of Driall who recommended an adjustment which did not help. Again on December 5, plaintiff talked with a representative of Driall complaining of the same trouble, but at this point Driall refused to send any serviceman unless plaintiff agreed to pay for the service call. This plaintiff declined to do and on December 23 he delivered the drier to Jackson's premises. It appears that after the drier was delivered to Jackson, Driall changed its mind and offered to send a repairman at its expense, but since the drier was no longer in plaintiff's possession, this offer was not accepted. After this litigation was commenced during the summer of 1975, Jackson sold the drier to another farmer who claimed to have used the drier thereafter without any difficulties. Plaintiff learned of the resale and the apparent purchase price of $10,000, requested that the same be deposited with the clerk of the court to abide the resolution of the litigation and it is this $10,000 which was credited on the judgment.

At the time that Jackson delivered the drier to plaintiff on October 14, he also delivered to plaintiff the owner's manual. The first page of the

owner's manual was the express warranty made by Driall. It was as follows:

## "WARRANTY

The manufacturer warrants the mechanical parts of DriALL driers against defective material and workmanship for a period of one year from delivery date and agrees to repair or replace (at its option) such defective parts F.O.B., Attica, Indiana.

All electrical parts are warranted to the extent of the warranty provided by the respective manufacturers of each electrical part.

This warranty is made in lieu of all other warranties, either expressed or implied and the manufacturer shall in no event be liable for any warranty expressed or implied beyond the repair or replacement of the defective parts. This warranty to repair or replace these defective parts shall cease if the equipment has been altered or the equipment is not operated in accordance with the instructions or if the temperature controls are disregarded or not used."

The plaintiff read the warranty, understood the conditions, and also read the remainder of the manual concerning the operation of the drier.

The plaintiff claimed damages for $12,000, the cost of the drier, approximately $17,000 for corn which spoiled or which could not be picked until too late in the season and an additional $3,000 for a storage bin purchased to be used with the particular drier. The jury's verdict of $29,350 represented all of the damages claimed by the plaintiff except for the amount of the storage bin.

Plaintiff's complaint consists of four counts. Count I was directed against the defendant, Jackson, and was for breach of the express warranty as specified in the owner's manual. Count II is directed against the defendant, Jackson, and is based on an alleged implied warranty on the part of Jackson at the time of said sale that said drier was fit for the particular purpose for which it was intended. Count III is addressed against the defendant, Driall, and is based on the breach of the express warranty contained in the owner's manual. Count IV is directed against Driall and is based on an alleged implied warranty of fitness for a particular purpose for which it was intended. The express warranty referred to in counts I and III is the same warranty contained in the owner's manual which is quoted at length earlier in this opinion. Defendants Jackson and Driall admitted the express warranty was contained in the owner's manual delivered to Schultz, but denied the warranty had been breached. They also claimed in their answer that the specific terms of the written express warranty excluded any implied warranties.

As indicated earlier, the jury found in favor of the plaintiff and

against the defendant Driall on count IV of the complaint which charged breach of an implied warranty, but against the plaintiff on all other counts. Driall has appealed from the judgment against them. Plaintiff has cross-appealed with respect to the judgment against him on count II which alleged Jackson breached an implied warranty. The cross-appeal by plaintiff is a contingent appeal to be considered only if this court determines that the judgment against Driall is erroneous. No cross-appeals have been filed by the plaintiff from the adverse judgment on counts I and III based on a breach of an express warranty.

Counts II and IV, charging breach of an implied warranty respectively against Jackson and Driall, referred to breach of the implied warranty of fitness for a particular purpose. The trial court appears to have held the evidence did not support the existence of such an implied warranty, but further held there was evidence sufficient to support a breach of the implied warranty of merchantability and that such implied warranty was not disclaimed by the terms of the warranty provisions including the express warranty. Accordingly, over the objection of the defendant, the trial court gave burden of proof and issues instructions relating only to the breach of an implied warranty of merchantability. A review of the record and the brief of the plaintiff reveals some confusion on the plaintiff's part concerning the differences between an implied warranty of merchantability and one for fitness for a particular purpose.

On this appeal defendant Driall makes several assignments of error; first, the court erred in submitting any issue concerning the implied warranty of merchantability to the jury because any such warranty was excluded in the written warranty; second, the court erred in submitting the issue based on implied warranty of merchantability to the jury because it was not supported by the evidence, and third, the court erred in approving the damage instruction including consequential damages.

Section 2—316 of the Uniform Commercial Code (Ill. Rev. Stat 1975, ch. 26, par. 2—316) permits negation of warranties provided such limitations comply with other sections of the Act. Subsection 2 of the aforementioned statute provides:

> "* * * to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof'."

■■ Whether the warranty disclaimed the existence of any implied warranties and particularly the warranty of merchantability depends

initially on the language of the disclaimer and secondarily on the conspicuousness of such language. To disclaim the implied warranty of merchantability the language of the disclaimer must mention merchantability. The official comment to section 316 of the Code adopted by the drafters (Ill. Ann. Stat., ch. 26, par. 2—316, Uniform Commercial Code Comment, at 255 (Smith-Hurd 1963)) provides:

> "3. Disclaimer of the implied warranty of merchantability is permitted under subsection (2), but with the safeguard that such disclaimers must mention merchantability * * *.
>
> 4. Unlike the implied warranty of merchantability, implied warranties of fitness for a particular purpose may be excluded by general language * * *."

As is evident from the foregoing commentary, unless the word "merchantability" appears in a written disclaimer, the implied warranty of merchantability survives the language of disclaimer. (*Overland Bond & Investment Corp. v. Howard* (1972), 9 Ill. App. 3d 348, 292 N.E.2d 168.) Since language in the "WARRANTY" did not include "merchantability", as a matter of law, the implied warranty of merchantability was not disclaimed. See also Annot., 73 A.L.R.3d 248, §18 (1976).

■■ We turn next to the question of consequential damages. Section 2—316(4) of the Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—316(4)) allows remedies for the warranty of merchantability to be limited in accordance with sections 2—718 and 2—719 of the Code. (Ill. Rev. Stat. 1975, ch. 26, pars. 2—718, 2—719.) Section 2—719(1) allows the agreement to limit the measure of damages recoverable to repair and replacement of nonconforming goods or parts. Paragraph (b) indicates that a remedy provided by the agreement is optional unless the remedy is agreed to be exclusive. As indicated in the Illinois Code Comment to this section (Ill. Ann. Stat., ch. 26, par. 2—719, Illinois Code Comment, at 602 (Smith-Hurd 1963)), paragraph (b) creates the presumption that clauses describing remedies are cumulative rather than exclusive. Here, the agreement provides "the manufacturer shall in no event be liable for any warranty express or implied beyond the repair or replacement of the defective parts." While this portion of the agreement is not a model of draftsmanship, we believe this language is sufficient to rebut the presumption that remedies stated in the contract are cumulative to those contained in the Code. By virtue of the foregoing exclusion, the plaintiff's sole remedy is repair or replacement of defective parts. Because of this contractual limitation, the trial court erred in submitting to the jury any question of consequential damages.

■■ From the record it appears that Jackson secured court approval and approval of the plaintiff to sell the drier to a third person for $10,000. This

amount was deposited with the clerk of the court and then paid to plaintiff. During the course of the trial it appears that the drier was actually resold to a different third party for $12,000. Under these circumstances we believe that plaintiff is entitled to the amount the drier was actually resold for, that is, $12,000. We note that the parties' actions regarding the disposition of the drier after it was returned to Jackson are in conformity with section 2—608 of the Code (Ill. Rev. Stat. 1975, ch. 26, par. 2—608), which allows revocation of acceptance for a breach of an implied warranty of merchantability. *Stamm v. Wilder Travel Trailers* (1976), 44 Ill. App. 3d 530, 358 N.E.2d 382.

Because of the contingent nature of the cross-appeal, we find it unnecessary to consider the cross-appeal, but would note in passing that the same reasons negating plaintiff's right to consequential damages are equally applicable to plaintiff's action against Jackson. Due to the view we have taken, it is unnecessary to discuss the other issues on appeal.

For the foregoing reasons the judgment of the circuit court of Bureau County in favor of plaintiff and against Driall is modified to $2,000 and as modified that judgment is affirmed. In all other respects the judgment of the circuit court is affirmed.

Judgment modified and affirmed.

ALLOY, P. J., and SCOTT, J., concur.