523 So.2d 651 (1988)
McCORMICK MACHINERY, INC., Appellant,
v.
JULIAN E. JOHNSON & SONS, INC., Appellee.
No. BP-257.
District Court of Appeal of Florida, First District.
March 11, 1988.
*652 Stephen J. Pajcic, III, of Pajcic & Pajcic, Jacksonville, for appellant.
John A. Meadows, of Wood, Burge & Miller, Winston-Salem, N.C., for appellee.
SMITH, Chief Judge.
Appellant, McCormick Machinery, Inc. (McCormick), seeks reversal of the trial court's final judgment in favor of appellee, Julian E. Johnson & Sons, Inc. (Johnson), in which the trial court determined that Johnson could revoke acceptance of a bulldozer sold to it by McCormick, and that Johnson was entitled to recovery of damages it incurred in connection with the transaction.
McCormick's argument on appeal focuses upon its contentions that the transaction was a "no-warranty" sale and, in addition, that the evidence was insufficient to establish that the bulldozer was in such defective condition when purchased as to justify Johnson's revocation of acceptance under the Uniform Commercial Code, section 672.608, Florida Statutes. In its final judgment, the trial court specifically found that the sale was a "no-warranty" transaction, but nevertheless found that the evidence concerning the defective condition of the bulldozer was sufficient to authorize revocation. Johnson cross-appeals the trial court's determination that the transaction was a "no-warranty" sale. We conclude that Johnson is correct on the issue raised by its cross-appeal, and we determine that the disclaimer of warranties relied upon by McCormick and the trial court was insufficient to disclaim the implied warranty of "merchantability," under the Uniform Commercial Code, section 672.314, Florida Statutes (1985). Although we agree that the evidence tends to support the trial court's findings and Johnson's arguments on appeal that the bulldozer suffered from extensive defects, we find internal inconsistencies in the findings contained in the final judgment, and our review is further hampered by reason of the posture of the case as presented on appeal to this court. We conclude that the trial court's determination in Johnson's favor must be set aside for failure to apply the proper legal standards governing claims under an implied warranty of merchantability. We are therefore compelled to reverse and remand to the trial court for further proceedings.
The bulldozer in question was sold by McCormick to Johnson for $51,000.00. After a general inspection of the machine at McCormick's place of business, Johnson's representative was generally satisfied with the appearance of the machine and discussed with McCormick the installation of a yoke, which McCormick agreed to install. McCormick, at Johnson's request, made arrangements for the financing of the purchase with C & S Bank. On November 16, 1983, prior to the execution of the formal sales agreement, the bulldozer was delivered to Johnson, at which time its chief mechanic observed oil around the cylinder heads. A couple of days later, while being operated on its first job, the blade lifter arm broke off. Shortly thereafter, on the second job, the machine would go forward, but not backward, and it was discovered that the shifting rods, which were worn out and had been held together with baling wire, had come off. These problems were corrected.
The formal conditional sales contract was executed on December 12, 1983. On the front of this document, in bold-face print, appeared the attempted disclaimer of all express and implied warranties, as follows:
Seller makes no warranties, expressed or implied, with respect to the property and Buyer accepts delivery hereof under the warranties (if any) of the manufacturer only.
*653 Following execution of the sales contract, the bulldozer experienced a multitude of problems, including a defective steering clutch and two cracked cylinder heads, which necessitated major repairs in excess of $22,000.00. At the time of Johnson's revocation of acceptance, according to a finding made by the trial judge, the evidence revealed the need for a new undercarriage at a cost of some $16,000.00. The need for the first major repairs occurred approximately four months after delivery, at which time the bulldozer had been used only about 200 hours. There was testimony that with normal use a bulldozer should operate about 180 hours each month. Subsequent to the major repairs, the steering clutch continued to cause problems.
Finally, by letter dated November 14, 1984, one year after delivery of the bulldozer, Johnson informed McCormick of its intent to rescind the contract. During the one year period while the bulldozer was in Johnson's possession, it was operated for a total of approximately 300 hours, and was in the repair shop about five months of that time.
McCormick filed a replevin action, obtained possession of the bulldozer, and sought damages from Johnson. Johnson, in turn, filed a counterclaim for rescission of contract, breach of contract, and fraud in connection with the transaction. Following a nonjury trial, the trial court entered a final judgment in favor of Johnson, approving Johnson's revocation of acceptance and rescission of the sale, and awarded Johnson damages sustained by it in connection with the transaction. The trial court found no fraud.
Turning to the issues on appeal, we find it appropriate to deal first with Johnson's cross-appeal, asserting that the trial court erred in finding that the attempted disclaimer in the contract was effective as a disclaimer of all warranties in connection with the sale. We agree with Johnson's position that the disclaimer was not effective to eliminate all implied warranties, but not for the reasons asserted. Johnson argues that the disclaimer of warranties was not conspicuous, and further did not conform to the provisions of the Uniform Commercial Code because the disclaimer appeared in a document executed after delivery of the bulldozer, and was not a part of the bargain between the parties. The trial court disagreed, finding that the disclaimer was conspicuous within the meaning of section 672.316, Florida Statutes (1985), and effectively removed the property from the implied warranty provisions of the Florida Uniform Commercial Code. While we agree with the trial court's ruling that the disclaimer was "conspicuous" and part of the bargain between the parties, we disagree with the finding that it was effective under provisions of the Code.
In addition to the express terms of a contract for the sale of goods by a merchant, the law imposes a contractual term promising quality; i.e., the goods must be merchantable. § 672.314(1), Fla. Stat. (1985). However, a seller may limit his liability exposure by disclaiming the implied warranty of merchantability, provided the disclaimer mentions merchantability, and in the case of a writing, that it be conspicuous. § 672.316(2). In the case before us, as stated above, the contract states in bold-face type, in the middle of the page: "Seller makes no warranty express or implied, with respect to the property and Buyer accepts delivery thereof under the warranty (if any) of the manufacturer only." While this disclaimer is conspicuous, Rudy's Glass Const. Co. v. E.F. Johnson Co., 404 So.2d 1087 (Fla. 3rd DCA 1981), and Monsanto Agr. Products Co. v. Edenfield, 426 So.2d 574 (Fla. 1st DCA 1982), it fails to mention "merchantability." The issue, then, is whether this omission renders the attempted disclaimer ineffective. We conclude that it does.
We are not unmindful of section 672.316(3)(a), which provides: "Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like `as is,' or `with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty... ." At first blush, it might appear that under this section the *654 clause found in the contract was sufficient to disclaim all implied warranties because the language "makes plain that there is no implied warranty." § 672.316(3)(a). However, to permit a disclaimer couched in the terms used here to negate the implied warranty of merchantability would effect a literal rewriting of section 672.316(2) to exclude the requirement that the disclaimer mention "merchantability." In Rehurek v. Chrysler Credit Corporation, 262 So.2d 452 (Fla. 2nd DCA 1972), cert. den., 267 So.2d 833 (Fla. 1972), the court found that a disclaimer provision failing to mention the word "merchantability" was insufficient. Although the court specifically found that the disclaimer clause failed "for the lack of conspicuousness ..." (262 So.2d at 454), further discussion in the opinion emphasizes the necessity for use of the word "merchantability" in order to effectively exclude an implied warranty of merchantability. We find that most courts from other jurisdictions have similarly held that general language disclaiming warranties is insufficient to exclude the implied warranty of merchantability, thus enforcing the requirement that the word "merchantability" be included in the disclaimer. E.g., see Two Rivers Co. v. Curtiss Breeding Service, 624 F.2d 1242, reh den., 629 F.2d 1350, cert. den., 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 348; Schultz v. Jackson, 67 Ill. App.3d 889, 24 Ill.Dec. 395, 385 N.E.2d 162 (1979); Collins Radio Co. of Dallas v. Bell, 623 P.2d 1039 (Okl.App. 1980). See also, J. White and R. Summers, Uniform Commercial Code, § 12-5 (2nd Ed. 1980).
In summary, McCormick's obligation under the contract, in the light of the ineffective disclaimer, was to deliver to Johnson a specific used bulldozer of merchantable quality. Contrary to the ruling of the trial court, which found the disclaimer provision effective to exclude any and all express or implied warranties, we find the attempted disclaimer ineffective to exclude the implied warranty of merchantability. The question then arises: Upon what basis did the court find that the bulldozer was "nonconforming," thus giving Johnson the right to revoke his acceptance of the machine?
The Uniform Commercial Code, as adopted in Florida, provides that a buyer may revoke acceptance of goods under certain conditions, as follows:
672.608 Revocation of acceptance in whole or in part. 
(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:
(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the group for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
The first requirement is that the goods must actually be "nonconforming." Turning to the Code, we find that goods are "conforming," or "conform to the contract," when they are "in accordance with the obligations under the contract." § 672.106. The parties' contractual obligations are determined by the language of the agreement itself, as well as the law governing commercial sales, Chapter 672, Florida Statutes (1985) (Uniform Commercial Code: Sales). The conditional sales contract here called for a used 1980 14C Fiat Alis Tractor (bulldozer), serial number 16688. It is undisputed that Johnson received this bulldozer, and that on delivery, it had all of its parts and was correctly assembled (with the possible exception of the baling wire holding the shifting rods in place which was corrected) and was operable.
*655 As we have already determined, the law imposes upon a contract for the sale of goods by a merchant the requirement that the goods be "merchantable." The requirement of merchantability therefore applies to the sale of the bulldozer by McCormick to Johnson, since, as we have determined, efforts by McCormick to disclaim this warranty were ineffective. Although the UCC does not define "merchantability," section 672.314(2) sets minimum standards for merchantability. These are:
(a) Pass without objection in the trade under the contract description; and
(b) In the case of fungible goods, are of fair average quality within the description; and
(c) Are fit for the ordinary purposes for which such goods are used; and
(d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) Are adequately contained, packaged, and labeled as the agreement may require; and
(f) Conform to the promises or affirmations of fact made on the container or label if any.
"Merchantability" is said to be a flexible concept which depends upon the description of the goods and the circumstances of the sale. Section 2-314, UCC Comments No. 3, 6; Dickerson v. Mountain View Equipment Company, 109 Idaho 711, 710 P.2d 621 (App. 1985); Perry v. Lawson Ford Tractor Co., 613 P.2d 458 (Okl. 1980). The standard that must be met for used goods to meet the requirement of merchantability is necessarily different from that required as to new goods. It has been held that among the factors to be considered in determining the merchantability of used goods are (1) the extent of prior use, (2) the buyer's knowledge of the used goods, and (3) whether the price for the goods was significantly discounted at the time of sale. International Petroleum Services, Inc. v. S & N Well Service, Inc., 230 Kan. 452, 639 P.2d 29 (1982). Further: "A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description." Comment 3 to § 2-314, Uniform Commercial Code; Fuquay v. Revels Motors, Inc., 389 So.2d 1238 (Fla. 1st DCA 1980).
Upon examination of the facts in the present case, we note initially that this heavy piece of equipment was traded in by a construction company to McCormick and then placed in McCormick's rental fleet prior to being sold to Johnson. Thus, it had undergone the heavy wear and tear normal in the construction business. Implicit in the characterization of the equipment as "used" is the possibility that individual components might be worn out or otherwise defective, necessitating replacement or repair. From a review of the record, we cannot say that the evidence conclusively demonstrates that the condition of the individual parts of the bulldozer were worse than might be expected in light of the age, prior use, and apparent condition of the bulldozer. Although there was considerable evidence as to the extent of the repairs and replacement of parts which became necessary during use by Johnson, whether this evidence demonstrates a lack of "merchantability" must be determined in the light of the circumstances of the transaction, including the bulldozer's type, age, history of prior usage, and the evidence of wear and tear obvious upon ordinary examination.
McCormick allowed the construction company from which it bought the machine a $40,000 trade-in allowance on the bulldozer, then sold it to Johnson for $51,000.00, a part of which was paid by credit for a $6,000 trade in of one of Johnson's old bulldozers. The record is silent as to the price of a new 14C bulldozer, and is also silent as to the price customarily paid for similar bulldozers in their used condition.
Turning once again to the findings of the trial judge in support of the ruling that Johnson was entitled to revoke acceptance of the bulldozer as "nonconforming," we find the following recitals in the final judgment:

*656 12. The court finds ... that the tractor failed to conform to the reasonable expectations [of the buyer] after numerous attempts by the seller/plaintiff/counter-defendant to correct the problems and effect the repairs.
13. The court finds that the tractor did not conform to the reasonable expectations of the defendant/buyer, that the nonconformity substantially impaired the value of the goods to the buyer and, that the buyer did not know of the non-conformities when the tractor was accepted and that its acceptance was induced by the difficulty of discovering the nonconformity before acceptance and by the seller's assurance that the tractor was in good, operable condition.
The difficulty we encounter in accepting the trial court's ruling on the "nonconformity" issue, is that in order to be nonconforming, there must be some warranty or provision in the contract to which the goods must conform. "Absent any warranty by the lessor/seller in this situation there is nothing to which the goods must conform, ergo, there can be no nonconformity." Konicki v. Salvaco, Inc., 474 N.E.2d 347 (Ohio App. 1984).
The trial judge found, as previously noted, an effective disclaimer of all warranties, both expressed and implied. Under this finding, there could have been no nonconformity to the contract based on the condition of the machine. Substantial case law on this point holds that where there is a valid disclaimer of all warranties, including the warranty of merchantability, the remedy of revocation of acceptance for nonconformity is not available to a dissatisfied purchaser. Konicki v. Salvaco, Inc., supra; Crume v. Ford Motor Co., 60 Or. App. 224, 653 P.2d 564 (1982); and Clark v. Ford Motor Co., 46 Or. App. 521, 612 P.2d 316 (1980). Cf., Seekings v. Jimmy GMC of Tucson, Inc., 130 Ariz. 596, 638 P.2d 210 (1981). We note that implicit in the Seekings decision is the finding that the seller's oral representations were part of the contract and as such were not negated by a written disclaimer.
While it may be suggested that the standard used by the trial judge, i.e., "the reasonable expectations of the buyer," encompasses the same factors as would be considered under the "merchantability" standard, we decline to so hold. We take the same view with respect to the trial judge's finding that the bulldozer was represented by McCormick to be in "good, operable condition." This finding, we note, was made in connection with the trial court's ruling that McCormick's oral pre-sale assurances induced Johnson to refrain from making a more thorough examination of the machine before final acceptance.
In sum, we conclude that the trial court was persuaded to evaluate the evidence concerning the sales transaction and the defective condition of the machine under an improper standard, rather than under the correct standard of "merchantability" under the Uniform Commercial Code. While it may be possible for this court to review the record to determine the evidentiary support, or lack of it, for the trial court's specific factual findings concerning the transaction and the condition of the machine, and to arrive at our own conclusion as to whether the machine was or was not "nonconforming" under an implied warranty of merchantability, again we decline to do so. First, under well established rules of appellate procedure this issue should first be addressed to the trial court for a ruling after appropriate briefing and argument. In Re Beverly, 342 So.2d 481 (Fla. 1977); Henry v. LeMac Builders, 245 So.2d 115 (Fla. 3d DCA 1971). Secondly, neither party on appeal has argued this case in the light of the applicable law as found by this court. Under these circumstances, we are compelled to reverse and remand for further proceedings.
Because of the necessity for further proceedings below, which may again result in a judgment favoring appellee Johnson, we find it appropriate to address McCormick's contention that the trial court, in computing the damage award in favor of Johnson, improperly computed these damages by giving Johnson double credit for amounts paid to reduce the balance of the purchase *657 price owed on the machine. In the event after further proceedings Johnson recovers damages, the trial court is instructed to eliminate the amount representing the principal included in the installment payments made by Johnson to C & S Bank insofar as the same would result in a double recovery.
The judgment appealed is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion, including, in the discretion of the trial court, the receipt of such additional evidence as the trial court shall deem necessary for the final resolution of this cause.
REVERSED and REMANDED.
WENTWORTH and JOANOS, JJ., concur.