**DAVIS INDUSTRIAL SALES, INC.,
Appellant–Respondent,**

v.

**WORKMAN CONSTRUCTION CO.,
INC., Respondent–Appellant.**

**Nos. 18123, 18130.**

Missouri Court of Appeals,
Southern District,
Division One.

June 22, 1993.

Albert Crump, Jr., P.C., Rolla, for Davis Indus. Sales, Inc.

R. Brooks Kenagy, Steelville, Workman Const. Co., Inc.

PARRISH, Chief Judge.

In No. 18123, Davis Industrial Sales, Inc. (Davis Sales) appeals from that part of a judgment that awarded Workman Construction Co., Inc. (Workman Construction) damages on a counterclaim in the amount of $3,500 for breach of an express warranty regarding a forklift that Davis Sales sold to Workman Construction. In No. 18130, Workman Construction appeals from a part of the same judgment that awarded Davis Sales $8,400 for Workman Construction's breach of contract. This court affirms in both appeals.

Workman Construction purchased a used forklift from Davis Sales for an agreed price of $8,400. It was delivered to a work site at Cuba, Missouri, where Workman Construction was erecting a commercial building. The used forklift was delivered by a representative of Davis Sales. He attempted to demonstrate the forklift at the time of delivery. He discovered that a hydraulic pump on the forklift was defective. He obtained a new hydraulic pump, replaced it and continued demonstrating the operation of the forklift.

Following the demonstration, Workman Construction delivered a check in the amount of $8,400 to Davis Sales' represen-

tative. Workman Construction received the forklift and a sales ticket.[1] The sales ticket had the name, address and telephone number of "Davis Industrial Sales" printed at its top. The date was written in a space provided for that purpose. The ticket stated "SOLD TO" followed by "Workman Construction Co." printed by hand. In a column labeled "DESCRIPTION," the words "American Econo Lift 8000" and "tax including 400.00" were written. Following those words were additional handwritten words, "Machine purchased & picked up in OK at trade site by above party." The designations "Ck # 2798" and "CW" followed. The sales ticket also had the words "SOLD AS USED EQUIPMENT. NO WARRANTIES OR LIABILITIES EXPRESSED OR IMPLIED" in small print that appeared to have been placed on the sales ticket by a rubber stamp. Below that was printed, "ALL Claims and Returned Goods MUST Be Accompanied By This Bill," followed by the word "SIGNATURE" and a line.

The sales ticket had columns with headings: "QUAN.," "PRICE," and "AMOUNT." The handwritten number "1" appeared under "QUAN." "$8400.00" was handwritten under "AMOUNT."

On Friday, August 5, 1988, the day after the forklift had been delivered, a representative of Workman Construction, David Workman, called Davis Sales and complained that Workman Construction was having "problems" with the forklift and requested that John Davis, the representative of Davis Sales who delivered the forklift, return his telephone call. Chilton Workman explained:

> We waited, of course, the rest of the day, a Friday and, then, nothing happened. Well, Saturday and Sunday went by and then, Monday and Tuesday, nothing happened. Wednesday, I finally thought—It was about noontime or so. I thought I'd better go up and stop the check to—so they would know we were having problems. It would more or less

get their attention so they would get back with us.

John Davis, on behalf of Davis Sales, contacted the Prosecuting Attorney of Crawford County and attempted to have criminal charges filed based upon the "stop payment" check. Criminal charges were not filed. Davis Sales did not pick up the forklift.

Davis Sales filed suit against Workman Construction to recover the sales price of the forklift on the basis of breach of contract and for dishonoring the check that was originally given in payment for it. Workman Construction filed a counterclaim (and later an amended counterclaim) by which it sought recovery of damages from Davis Sales for "breach of its warranties, promises and assurances, both express and implied."

The trial court entered written findings of fact and conclusions of law. It found for Davis Sales on its petition and awarded damages of $8,400, and for Workman Construction on the counterclaim and awarded damages of $3,500.

This case was tried without a jury. Appellate review is undertaken pursuant to Rule 73.01(c). That rule, as construed in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), requires "that the decree or judgment of the trial court ... be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

### No. 18123

Davis Sales, in its appeal from the part of the judgment that awarded damages to Workman Construction on its counterclaim, complains about two "conclusions of law" that the trial court entered. The first of the two conclusions of law states:

> However, the language on the bill of sale "machine purchased and picked up in OK at trade sight [sic] by above party" indicates to the court Davis Industri-

a "bill of sale."

---

1. The representative of Davis Sales who delivered the forklift characterized the sales ticket as

al Sales, Inc. expressed a warranty to the effect the machine was in a safe operable condition.

Davis Sales contends that the trial court's interpretation of the handwritten notation on the sales ticket was incorrect; that it is not consistent with § 400.2–316(1) [2] and is, therefore, an erroneous application of law. It argues that the statement was not an express warranty of fitness; that it only conveyed information that the forklift had been "picked up" by Davis Sales in Oklahoma.

Section 400.2–316(1) requires that words relevant to ascertainment of whether there is an express warranty "shall be construed wherever reasonable as consistent with each other." Words "relevant to the creation of an express warranty" and words "tending to negate or limit warranty" are to be considered in a manner consistent with one another. *Id.*

The interpretation that Davis Sales urges is that "OK" is an abbreviation for Oklahoma; that it did not mean "alright" or "in working condition" or anything else that described the mechanical condition of the forklift that was delivered to Workman Construction. By accepting "OK" as meaning Oklahoma, the phrase on the sales ticket, "Machine purchased & picked up in OK at trade site by above party," conveys the message that the forklift (the "machine") was picked up in Oklahoma by Davis Sales (who is the "above party" because its name appears at the top of the sales ticket).

This interpretation is consistent with the words "to negate or limit warranty" that are stamped on the bottom of the sales ticket in the following form:

SOLD AS USED EQUIPMENT.
NO WARRANTIES
OR LIABILITIES
EXPRESSED OR IMPLIED.

John Davis, the representative of Davis Sales who delivered the forklift, explained

that Davis Sales originally purchased the forklift in Kansas City; that Davis Sales "leased it out to a—a mining outfit that was contracting setting transformers for the Oklahoma Coop." He testified further:

And they were setting transformers like up on the second deck and all this and that. I leased it to them under a six-month lease. They used it four months and called me and told me that they was just about done with it and wanted to know if they could return it. And approximately the same day, Mr. Workman had called wanting to buy the lift. So, I went down and refunded their two months lent—rent for the six-month lease.

.      .      .      .      .

And I picked it up in Picher, Oklahoma, and brought it to Cuba, Missouri.

Section 400.2–313(1) states what is required in order for a seller to create express warranties. Section 400.2–313(2) then explains:

It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, *but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.* [Emphasis added.]

Davis Sales makes a strong case for the proposition that the trial court's conclusion of law is an erroneous application of § 400.2–316; that a review of the entire language on the face of the sales ticket requires the determination that there was no express warranty. It is also arguable that even if the words on the sales ticket could be interpreted as Workman Construction contends, i.e., that the forklift was in "okay condition," those words would not suffice as a declaration of an express warranty but would be "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods" and, as

**2.** References to statutes are to RSMo 1986 un-      less otherwise stated.

such, did not create a warranty. *See* § 400.2–313(2). *See also Guess v. Lorenz,* 612 S.W.2d 831, 833 (Mo.App.1981). It is not necessary to determine the issue regarding an express warranty, however, in view of the trial court's finding that there was an implied warranty.

■ The trial court found that "implied warranties were not excluded within the meaning of § 400.2–316(3)(a)." It stated:

> The bill of sale ... contained both "SOLD AS USED EQUIPMENT ... NO WARRANTIES OR LIABILITIES EXPRESS OR IMPLIED" *and* "ALL Claims and Returned Goods MUST Be Accompanied By This Bill" on its face. This language creates an ambiguity on the face of the document. Accordingly, implied warranties were not excluded within the meaning of § 400.2–316(3)(a) and *Harper v. Calvert,* 687 S.W.2d 227 (Mo.App.1984).

Section 400.2–316(3)(a) addresses the implied warranty of merchantability. It provides that even if the term "merchantability" is not mentioned in a writing that undertakes to modify or exclude the implied warranty of merchantability (as is otherwise required by § 400.2–316(2)):

> unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty.

Davis Sales did not use the precise "as is" or "with all faults" language that § 400.2–316(3)(a) designates and which was used in *Harper v. Calvert, supra,* the case cited by the trial court in the conclusion of law that is quoted above. Workman Construction argues that there was an implied warranty of merchantability. This court agrees.

The language on the sales ticket that attempted to limit implied warranties said, "SOLD AS USED EQUIPMENT. NO WARRANTIES OR LIABILITIES EXPRESSED OR IMPLIED." It did not mention merchantability as required by § 400.2–316(2). It did not use the "as is" or "with all faults" language of § 400.2–316(3)(a). At the same time, as was emphasized by the trial court, the sales ticket implied that the merchandise that was sold could be returned by including the language, "ALL Claims and Returned Goods MUST Be Accompanied By This Bill."

In *McCormick Machinery, Inc. v. Johnson & Sons,* 523 So.2d 651 (Fla.App. 1 Dist.1988), a case involving the same provisions of the Uniform Commercial Code, the Florida court construed similar language involving the sale of machinery and reached the same conclusion as was reached by the trial court in this case.

McCormick sold a used bulldozer to Johnson. The following words appeared on the front of the sales contract in bold-face type:

> **Seller makes no warranties, expressed or implied, with respect to the property and Buyer accepts delivery hereof under the warranties (if any) of the manufacturer only.**

*Id.* at 652. The Florida court explained the failure of the disclaimer with respect to the implied warranty of merchantability:

> In addition to the express terms of a contract for the sale of goods by a merchant, the law imposes a contractual term promising quality; i.e., the goods must be merchantable. § 672.314(1), Fla.Stat. (1985). However, a seller may limit his liability exposure by disclaiming the implied warranty of merchantability, provided the disclaimer mentions merchantability, and in the case of a writing, that it be conspicuous. § 672.316(2) [Fla. Stat. (1985)].... [The disclaimer] fails to mention "merchantability." The issue, then, is whether this omission renders the attempted disclaimer ineffective. We conclude that it does.

*Id.* at 653. *See also Lecates v. Hertrich Pontiac Buick Co.,* 515 A.2d 163 (Del.Super.1986); *Allis–Chalmers Credit Corp. v. Herbolt,* 17 Ohio App.3d 230, 17 OBR 496, 499–500, 479 N.E.2d 293, 297–98 (1984); *Schultz v. Jackson,* 67 Ill.App.3d 889, 24

Ill.Dec. 395, 398, 385 N.E.2d 162, 165 (1979).

The trial court's conclusion that the implied warranty of merchantability was not excluded due to ambiguous language on the sales ticket or "bill of sale" that Davis Sales delivered to Workman Construction is consistent with the Florida court's interpretation of the same provision of the Uniform Commercial Code in *McCormick Machinery, Inc. v. Johnson & Sons, supra,* and with the applications of the implied warranty provisions of the Code in *Lecates v. Hertrich Pontiac Buick Co., supra; Allis-Chalmers Credit Corp. v. Herbolt, supra;* and *Schultz v. Jackson, supra.* It is supported by substantial evidence. It neither erroneously declares nor applies the law. It does not matter whether the breach of warranty was a breach of an express warranty or an implied warranty. Davis Sales' first point on appeal is denied.

Davis Sales' second point is directed to the trial court's "conclusion of law number 5" that states:

> The Defendant [Workman Construction] is entitled to damages from the Plaintiff [Davis Sales] for breach of express warranty in an amount equivalent to the difference between the purchase price and the value of the forklift in its defective condition. The difference in value is $3,500.00.

Davis Sales contends that this conclusion of law is erroneous "in that it is not supported by any competent evidence of a difference in value of the forklift when sold to [Workman Construction] and the value of the forklift if it was as warranted."

■ The measure of damages is the same for breach of an implied warranty of merchantability as for breach of an express warranty. The correct measure of damages is the difference between the value of the forklift when Workman Construction accepted delivery of it and the value it would have had if it had been as warranted. § 400.2–714(2).

■ The value of the forklift in the condition warranted was its sales price, $8,400. *See* J. White & R. Summers, *Uniform Commercial Code* § 10–2, p. 506 (3rd Ed.

1988). There was evidence that the repairs necessary to make the forklift fit for the ordinary purposes for which it would be used would cost at least $3,000 and that "$3,000 may be low." A witness, Daniel Flint, whose occupation was servicing and repairing forklifts, examined the forklift and determined that it was in bad shape; that the cylinders were leaking, including the lift cylinder; that the lifting mechanism was not satisfactory; that the brakes were inadequate. His opinion was that the forklift "was an unsafe piece of equipment to be using."

The problems that Workman Construction experienced with the forklift were not limited to those identified by Mr. Flint. There were other problems with its steering and braking. Pivot points "to line things up" were not set properly. The lift did not function when the motor was idling. In order for the lift to function, the motor had to run at a higher speed, there had to be more "RPM's on the motor." Those problems were identified by another serviceman.

Considering that Mr. Flint testified that $3,000 "may be low" and that there had been other problems with the forklift that were not included in the cost estimate he gave, there was sufficient evidence from which the trial court could determine that Workman Construction sustained damages in the amount of $3,500 for breach of warranty. The Uniform Commercial Code § 2–714(2) formula for determining damages— being the provision enacted in Missouri as § 400.2–714(2)–has been interpreted as permitting cost of repair or replacement as the measure of before and after value of goods.

> The 2–714(2) formula (difference between the value of goods as accepted and the value of goods as warranted) is essentially the same as the pre-Code formula. A useful objective measurement of the difference in value as is warranted is the cost of repair or replacement. [Footnotes omitted.]

J. White and R. Summers, *supra,* at 503–04, *citing Southern Concrete Products Co. v. Martin,* 126 Ga.App. 534, 191 S.E.2d

314 (1972), and *General Supply & Equipment Co. v. Phillips*, 490 S.W.2d 913 (Tex. Civ.App.1972). Davis Sales' second point is denied.

### No. 18130

Workman Construction appeals from the trial court's denial of its request for consequential damages in its counterclaim for breach of warranty. It also appeals from the trial court's finding for Davis Sales on its claim for breach of sales contract and for its dishonoring the check given in payment for the forklift.

■ The point on appeal that is directed to the claim for consequential damages alleges that the trial court erred in not awarding consequential damages for Davis Sales' breach of warranty because Workman Construction expended $6,332 "to hire replacement machinery for the forklift."

Section 400.2–714(3) provides:

In a proper case any incidental and consequential damages under section 400.2–715 may also be recovered.

Section 400.2–715(2) states:

Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; . . . .

At trial a representative of Workman Construction testified that his company rented items of equipment for use by some of its subcontractors. Specifically, he testified that Workman Construction rented a "lift system" for $780 for a plumbing company to use "in lieu of the forklift" to lift piping and scaffolding; $3,092.46 for a "lifting platform" for an electrical company to use to hoist materials and unload delivery trucks; and $3,672 for a crane on the back of a two-ton truck to lift steel beams in order for a welding company to install crane rails in the building under construction.[3]

No evidence was presented, however, that showed timely action or due diligence by Workman Construction in seeking repair of the forklift. The evidence about renting other equipment was indefinite as to when the equipment was rented and whether the equipment that was rented was comparable to the forklift.

In *Crank v. Firestone Tire & Rubber Co.*, 692 S.W.2d 397, 403 (Mo.App.1985), the court addressed the issue of consequential damages and held that a plaintiff could recover for the loss of use of an automobile "for the time that was reasonably necessary to repair the property or the time necessary in the exercise of due diligence to secure repair." This court is persuaded by the reasoning in *Crank*. Workman Construction did not show that it exercised due diligence in obtaining repairs for the forklift.[4] Workman Construction's first point is denied.

■ In its final point on appeal, Workman Construction contends that the trial court erred in finding that Davis Sales was entitled to recover for the purchase price of the forklift because it "had rejected the forklift within a reasonable time after its delivery and communicated such rejection to [Davis Sales]."

---

3. These amounts total $7,544.46. Workman Construction sought consequential damages in the amount of $6,332. No explanation was given regarding the difference in these amounts.

4. Workman Construction cites *Worthey v. Foam Specialty Products, Inc.*, 591 S.W.2d 145 (Mo. App.1979), in support of its claim that it should have been awarded consequential damages for equipment rental expenses. In *Worthey*, the seller of a truck was informed by the buyer that the truck was needed to haul equipment and transport merchandise to customers. The truck that was purchased failed because of mechanical problems while it was being used for the intended purpose. The buyer was allowed $700 consequential damages for the "expense of having to rent a substitute truck, paying useless license fees and taxes . . . and hauling expenses with U–Haul and Ozark Transfer." *Id.* at 151. In addition to there being no evidence that Workman Construction obtained timely repairs of the forklift, there is no evidence that the uses for which Workman Construction hired other equipment were uses that Davis Sales knew Workman Construction intended to make of the forklift.

■ Although the trial court used the term "rejection" in its conclusion of law,[5] Workman Construction had not asserted a claim for recovery or a defense based on rejection of the forklift. Its claim for damages against Davis Sales and its defense to Davis Sales' claim against it were based on breach of warranty. Since Workman Construction proceeded on a breach of warranty theory before the trial court, it is bound by that theory on appeal.[6] *Roth v. Phillips Petroleum Co.*, 739 S.W.2d 598, 600 (Mo.App.1987). A different theory will not be considered for the first time on appeal. *Roy A. Scheperle Const. Co. v. Seiferts, Inc.*, 687 S.W.2d 222, 223 (Mo.App.1984). Workman Construction's claim that the trial court erred in not finding that it had rejected the forklift is denied.

The judgment of the trial court is affirmed.

CROW, P.J., and SHRUM, J., concur.

---

**5.** The trial court concluded:

> Workman Construction Company, Inc., d/b/a Workman Construction, Inc., waived any objections which it might have had to justify a rejection of the forklift by its failure to state in connection with a rejection, a particular defect or defects which were ascertainable by reasonable inspection so that Davis Industrial Sales, Inc. could have cured such defect or defects if stated seasonably, within the meaning of Section 400.2–605.(1) of the Revised Statutes of Missouri.

**6.** A buyer may seek damages for breach of contract under § 400.2–714 or may exercise the self-help remedy of rejection, but not both.

> At the outset one should understand the significance of a self-help remedy which permits the buyer to return the goods to the seller, (that is, rejection or revocation of acceptance). In such cases the buyer is freed from his obligation to pay the price, and he has a right to recover that part of the price he has already paid.... One should understand the economic difference between the status of the buyer who has rejected and the status of the buyer who has accepted and sued for breach of warranty. The typical buyer who accepts and sues for breach of warranty under 2–714 will recover only for injury proximately resulting from defects in the goods at the time of sale.... On the other hand, if buyer rejects the goods, he is first recompensed for the losses resulting from the seller's failure to perform his end of the contract (for example, by a suit under 2–713 or 2–712); more important, he escapes the bargain, and he throws any loss resulting from depreciation of the goods back upon the seller.
>
> J. White and R. Summers, *Uniform Commercial Code* § 8–1, p. 389 (3rd Ed.1988) (footnotes omitted).